IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDEN OAK I, LLC, and EDEN OAK
SHELL POINT, LLC,

              Plaintiffs,                    Case No. 2:26-cv-00789-SPC-NPM

v.

LEE COUNTY, FLORIDA,
              Defendant.

_____/

## DEFENDANT LEE COUNTY'S MOTION TO DISMISS COUNTS I, II AND III AND ALTERNATIVE MOTION TO STAY ALL COUNTS PENDING RESOLUTION OF PARALLEL STATE COURT ACTION

### INTRODUCTION

This is a federal takings and equal protection action arising from the denial of a rezoning application by Eden Oak I, LLC and Eden Oak Shell Point, LLC (collectively, "Eden Oak") in Lee County, Florida. Eden Oak chose state court first. It served a Bert Harris Act notice in February 2024, filed suit in April 2025, and litigated for over a year – discovery is ongoing, two summary judgment motions have been filed, and trial is set for October 2026. Seven months before trial, Eden Oak filed this action, copying virtually every factual allegation from its state complaint verbatim and asking this court to value the same property, evaluate the same governmental action, and award the same damages. While telling the *state* court that the property retains some $1,275,000 in fair market value, Eden Oak tells *this* Court that all

economically beneficial use has been eliminated. But Eden Oak pleads no facts to support that conclusion – no valuation, no appraisal, no before-and-after analysis, and no basis for the reasonable investment-backed expectations it claims. Counts I and III of Eden Oak's complaint wind up being defeated by Eden Oak's own filings.

According to the instant complaint, the Eden Oak property comprises approximately 306 acres on a southern peninsula where the mouth of the Caloosahatchee River meets Matlacha Pass and San Carlos Bay in unincorporated Lee County. (Doc. 1, ¶¶ 5–7, at PageID 3-4) The property is zoned Agricultural (AG-2). (Doc. 1, ¶ 27, at PageID 8) In December 2016, Eden Oak applied to rezone the property from AG-2 to Residential Planned Development ("RPD"), a site-plan-specific zoning process under the Lee County Land Development Code that is governed entirely by the specific development plan depicted on the applicant's master concept plan. If the plan is approved, only the development shown on the plan is authorized; if the plan is denied, only that specific proposal is rejected. Lee County Land Development Code ("LDC") §§ 34-373(a), 34-378, 34-381. Eden Oak's master concept plan proposed 55 single-family canal-front residences, 43 boat slips, a 13-slip docking facility, roads, parking, a surface-water management system, and a canal system, all requiring destruction of approximately 43.63 acres of mangrove wetlands – and all on the 50 specific acres of its 306 on which Eden Oak chose to submit. (Doc.

1, ¶¶ 6, 54–56, at PageID 3, 15; Doc. 1-2, Ex. L) On April 5, 2023, the Lee County Board of County Commissioners unanimously denied that specific proposal, adopting Resolution Z-18-016 and finding it violated twenty-two comprehensive plan provisions. (Doc. 1-2, Ex. L (also attached hereto as **Ex. 2**)) The denial did not rezone the property, did not eliminate any existing permitted use under the AG-2 classification, and did not preclude another application. LDC § 34-205(a)(2).

In this action, Eden Oak contends that a single Lee Plan provision – Policy 101.3.2, adopted by Ordinance 18-28 on December 5, 2018 – caused a total or partial regulatory taking of the property.[1] But Policy 101.3.2 is the only provision Eden Oak identifies as the source of the taking – and the Denial Resolution rests on far broader grounds, including wetland protection, estuarine water quality, native habitat, fish and wildlife diversity, FEMA flood hazard, Federal coastal barrier restrictions, and smalltooth sawfish critical habitat, a Federally listed species, among others, none of which depend on Policy 101.3.2. (Doc. 1-2, Ex. L (also attached hereto as **Ex. 2**), Resolution Z-18-016 §§ C.1–C.10.) Moreover, Policy 101.3.2 was not a discretionary local policy choice – Lee County adopted it pursuant to a state legislative mandate

---

[1]    Policy 101.3.2 provides: "Restrict development in the Coastal High Hazard Area to uplands except as needed for the provision of public facilities." The Coastal High Hazard Area is a state-defined designation encompassing the area below the category 1 storm surge line. § 163.3178(2)(h), Fla. Stat.

3

requiring local governments to restrict development in coastal high-hazard areas. §163.3178(1), (2)(h), Fla. Stat.

Counts I and III are defeated by Eden Oak's own filings and should be dismissed with prejudice. Count II is time-barred and insufficiently pleaded and should be dismissed with prejudice; alternatively, it is unripe and should be dismissed without prejudice. In any event, all counts should be stayed under Colorado River.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege facts sufficient to state a claim **plausible on its face**. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (emphasis supplied); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The Court accepts well-pleaded factual allegations as true but disregards conclusory statements and legal conclusions dressed as facts. Ashcroft, 556 U.S. at 678.

## JUDICIAL NOTICE OF THE STATE COURT COMPLAINT

A certified copy of Eden Oak's state court complaint is attached hereto as **Exhibit 1**. The Court may take judicial notice of state court records as public records at the Rule 12(b)(6) stage without converting to summary judgment for the purpose of establishing the existence and content of those filings. Fed. R. Evid. 201(b)(2); U.S. ex rel. Osheroff v. Humana Inc., 776 F.3d

4

805, 814 n.4 (11th Cir. 2015); Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc., 57 F. Supp. 3d 1358 (M.D. Fla. 2014), aff'd sub nom. Beepot v. JP Morgan Chase Nat. Corp. Servs., Inc., 626 F. App'x 935 (11th Cir. 2015); Knezel v. Wilmington Sav. Fund Soc'y, FSB, 476 F. Supp. 3d 1244 (M.D. Fla. 2020). Separately, Eden Oak's own statements in those filings are admissible non-hearsay against Eden Oak as party admissions. Fed. R. Evid. 801(d)(2). The Court uses Rule 201 to bring the state court record into the proceeding; it uses Rule 801(d)(2) to consider Eden Oak's statements in that record for their truth.

Lee County does not adopt or concede the truth of any allegation in Eden Oak's state court pleadings; it invokes those allegations solely as admissions by a party-opponent under Rule 801(d)(2). A party's pleading in a separate action is admissible as an admission against the pleading party without binding the party who offers it. Cont'l Ins. Co. of New York v. Sherman, 439 F.2d 1294, 1298 (5th Cir. 1971); Southmark Inv. Grp. 86, Inc. v. Turner Dev. Corp., 140 F.R.D. 1 (M.D. Fla. 1991) (citing Hanson v. Waller, 888 F.2d 806, 814 (11th Cir. 1989)). Admissibility under Rule 801(d)(2) runs only against the party who made the statement. United States v. Mapson, 96 F.4th 1323, 1332 (11th Cir. 2024).

<u>**ARGUMENT**</u>

**I.    COUNT I (LUCAS) – THREE INDEPENDENT GROUNDS FOR DISMISSAL**

5

Count I alleges a categorical regulatory taking under <u>Lucas</u>. Eden Oak alleges that the County's actions have "render[ed] the Property undevelopable and economically unviable, with little to no fair market value remaining," resulting in "a permanent and total deprivation of all use and enjoyment." (Doc. 1, ¶¶ 72–73, at PageID 18) Eden Oak's own filings defeat that claim – three times over.

## A.    Count I Is Time-Barred.

For a facial takings challenge brought under § 1983, the four-year limitations period accrues when the challenged regulation is enacted. Hillcrest Prop., LLC v. Pasco Cnty., 754 F.3d 1279, 1281–83 (11th Cir. 2014); Suitum v. Tahoe Reg'l Plan. Agency, 520 U.S. 725, 736 n.10, 117 S. Ct. 1659, 137 L. Ed. 2d 980 (1997) (facial challenges "are generally ripe the moment the challenged regulation or ordinance is passed"). CHHA Policy 101.3.2 was enacted December 5, 2018. (Doc. 1, ¶ 36, at PageID 10) The four-year limitations period expired December 5, 2022. The complaint in this case was filed March 19, 2026 – more than three years late.

Eden Oak's own complaint forecloses any argument that accrual ran from the April 2023 denial. Eden Oak alleges that Policy 101.3.2 was enacted "to thwart the development of the Eden Oak Property." (Doc. 1, ¶ 37, at PageID 10) Under <u>Hillcrest</u>, that enactment was the final action changing the status of this property; the 2023 denial was its legally compelled administrative

implementation, not a new accrual event. Eden Oak cannot simultaneously plead that the regulation was targeted at this specific property and invoke the denial several years later as the accrual date.

## B. Eden Oak's Own Allegations Defeat the Lucas Categorical Taking.

Eden Oak alleges that the County's actions "render[ed] the Property undevelopable and economically unviable, with little to no fair market value remaining." (Doc. 1, ¶ 72, at PageID 18)   Lucas requires deprivation of **all** economically beneficial use – a binary rule that applies "only when the owner is left with nothing." Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015, 1019 n.8, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992). Even a 95% diminution does not satisfy Lucas. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency, 535 U.S. 302, 330, 122 S. Ct. 1465, 152 L. Ed. 2d 517 (2002).

Eden Oak cannot satisfy that standard. In its state court First Amended Complaint (a party admission under Fed. R. Evid. 801(d)(2)) Eden Oak alleges the property retains some $1,275,000 in fair market value. (State Ct. First Am. Compl. ¶ 86, **Ex. 1** hereto.) Eden Oak cannot tell the state court that the property is worth some $1,275,000 and then tell this Court that it is worth nothing. It has done both.

Eden Oak's complaint in this case fares no better on its own terms. "Little to no fair market value remaining" (Doc. 1, ¶ 72, at PageID 18) is not

"no" fair market value. A plaintiff that concedes its property retains some value has not alleged deprivation of *all* economically beneficial use. Eden Oak's allegation describes a <u>Penn Central</u> diminution-in-value claim, not a <u>Lucas</u> categorical taking.

**C.      Eden Oak Fails to Plausibly Allege That the CHHA Amendment Caused Any Loss.**

To survive a motion to dismiss, Eden Oak's <u>Lucas</u> claim requires a **plausible** allegation that the CHHA amendment deprived the property of all economically beneficial use. <u>Lucas, 505 U.S. at 1019</u>. It cannot make that showing. The Denial Resolution, which is attached to the instant complaint and also attached hereto as **Exhibit 2**, documents twenty-two findings of comprehensive plan violation, only one of which is Policy 101.3.2, the CHHA amendment. (Resolution Z-18-016 §§ C.1–C.10, **Ex. 2** hereto.) The non-CHHA grounds include wetland destruction, public health and safety, storm surge, federal coastal barrier designation, coastal flooding and mangrove protection, estuarine water quality, native habitat and hydroecological systems, fish and wildlife diversity, smalltooth sawfish critical habitat, and wetland development limits.

Under Florida law, all development orders – including orders on rezoning applications, §163.3164(15)–(16), Fla. Stat. – "shall be consistent with" the comprehensive plan. §163.3194(1)(a), Fla. Stat. A BOCC action that

8

is inconsistent with even one provision of the comprehensive plan is *ultra vires* and cannot lawfully be approved. Machado v. Musgrove, 519 So. 2d 629, 632 (Fla. 3d DCA 1987). The Board of County Commissioners had no discretion to approve Eden Oak's application over even a single finding of comprehensive plan violation. The Denial Resolution contains twenty-two such findings, twenty-one of which are not Policy 101.3.2. Even if Policy 101.3.2 had never been adopted, the denial would have been compelled by any one of the remaining twenty-one provisions.

With twenty-one non-CHHA provisions independently compelling the same denial, the allegation that the CHHA amendment alone caused a total wipeout "stops short of the line between possibility and plausibility." Ashcroft, 556 U.S. at 678 (quoting Bell Atlantic Corp., 550 U.S. at 567). Moreover, Exhibit L to the complaint itself (the Denial Resolution) supplies the "obvious alternative explanation": Eden Oak's specific proposal was denied because it violated twenty-one provisions that had nothing to do with Policy 101.3.2. *See* id. at 682.

Eden Oak's causation allegations fail for an additional reason: the complaint does not plausibly allege that Eden Oak held reasonable investment-backed expectations in the development that was denied. Eden Oak alleges only that it "invested over $11 million." (Doc. 1, ¶ 71, at PageID 18) But spending money is not the same as having a reasonable expectation. "A

9

reasonable investment-backed expectation must be more than a unilateral expectation or an abstract need." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1005, 104 S. Ct. 2862, 81 L. Ed. 2d 815 (1984). A plaintiff who cannot establish reasonable expectations in the denied development cannot establish that the denial caused a compensable loss. Lake v. Charlotte Cnty., No. 2:20-CV-809-JLB-NPM, 2021 WL 5395924, at *7–8 (M.D. Fla. Nov. 18, 2021).

Eden Oak's own complaint underscores the implausibility of its causation theory. Eden Oak alleges that eight other properties "in the Coastal High Hazard zone" were approved for development that "impacted wetlands." (Doc. 1, ¶¶ 93–94, at PageID 22-23) If the CHHA amendment did not prevent approval of those eight projects, the allegation that the CHHA caused a total wipeout of Eden Oak's property does not cross "the line from conceivable to plausible." Ashcroft, 556 U.S. at 680 (quoting Bell Atlantic Corp., 550 U.S. at 570).

## II.  COUNT II (PENN CENTRAL) – TIME-BARRED, INSUFFICIENTLY PLEADED, AND ALSO UNRIPE

Count II alleges a partial regulatory taking under Penn Central. Eden Oak alleges that "the County's application of its Coastal High Hazard Comprehensive Plan Amendment, to its development application, prohibits any development of Eden Oak's land except for 'public facilities' that have been

designated as Wetlands." (Doc. 1, ¶ 81, at PageID 20) Eden Oak pleads no specific facts showing economic impact or investment-backed expectations.

### A.    Count II Is Time-Barred.

Count II is time-barred for the same reasons as Count I. *See* Section I.A, *supra*. The four-year limitations period ran from the enactment of the CHHA amendment on December 5, 2018 and expired December 5, 2022 – more than three years before this complaint was filed.

In spite of Eden Oak's careful drafting, the CHHA amendment, not the April 2023 denial, winds up being the alleged operative final action. Recall Eden Oak alleged that Policy 101.3.2 was enacted "to thwart the development of the Eden Oak Property." (Doc. 1, ¶ 37, at PageID 10) Under Florida law, the BOCC cannot lawfully approve an application that violates even one comprehensive plan provision. Machado, 519 So. 2d at 632. Eden Oak's proposed development lay entirely within the CHHA. Once Policy 101.3.2 took effect, Lee County had no legal authority to approve the application, and denial became a legal certainty. The 2023 denial therefore followed as a matter of law. Having pleaded the 2018 amendment as the source of the taking, Eden Oak cannot claim accrual in 2023.

### B.    The Complaint Fails to Allege Economic Impact.

Count II also fails to state a claim because the complaint contains no factual allegations of economic impact. Eden Oak alleges only that the County's

11

actions rendered "Eden Oak's wetland property undevelopable and economically unviable, with little or no fair market value remaining." (Doc. 1, ¶ 80, at PageID 20) A Penn Central claim requires specific factual allegations showing the regulation's economic impact on the claimant and the extent to which it interfered with distinct investment-backed expectations. Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978). Conclusory assertions of diminished value do not suffice. "The conclusory allegation that the property has been rendered worthless for private purposes ... is at least insufficient to withstand a motion to dismiss." Lake, 2021 WL 5395924, at *8 (quoting Baytree of Inverrary Realty Partners v. City of Lauderhill, 873 F.2d 1407, 1410 (11th Cir. 1989)). Eden Oak alleges no before-and-after valuation, no percentage diminution, no appraisal, and no facts from which economic impact could be measured against the Penn Central factors. That is precisely the pleading deficiency that warranted dismissal in Lake, 2021 WL 5395924, at *7.

Nor does the complaint adequately allege reasonable investment-backed expectations. Each count alleges only that Eden Oak "invested over $11 million in property acquisition, engineering, land use consultants, and other costs to develop the Property." (Doc. 1, ¶¶ 71, 79, 87, at PageID 18, 20, 21) But the amount of money spent pursuing development does not establish that the expectation of development was *reasonable*. As argued *supra*, "A reasonable

12

investment-backed expectation must be more than a unilateral expectation or an abstract need." Ruckelshaus, 467 U.S. at 1005. "The regulatory regime in place at the time the claimant acquires the property at issue helps to shape the reasonableness of those [distinct investment-backed] expectations." Palazzolo v. Rhode Island, 533 U.S. 606, 633, 121 S. Ct. 2448, 150 L. Ed. 2d 592 (2001) (O'Connor, J., concurring); *see also* Murr v. Wisconsin, 582 U.S. 383, 399–400, 137 S. Ct. 1933, 198 L. Ed. 2d 497 (2017). When Eden Oak acquired this property in 2008 and 2013, it was designated almost entirely as Wetlands on the Future Land Use Map and zoned AG-2. (Doc. 1, ¶¶ 8, 27–28, at PageID 4, 8) The Wetlands designation has limited density to one dwelling unit per twenty acres since at least 1994. Lee Plan Policy 1.5.1 (Ord. No. 94-30) The state mandate to restrict development in coastal high-hazard areas had been law since 1985. §163.3178, Fla. Stat. Eden Oak does not allege any governmental approval, entitlement, or assurance on which it relied in making its $11 million investment – it alleges only that it spent money pursuing a rezoning that had not been approved. That is not a reasonable investment-backed expectation.  That is a bad business decision.

The 2005 Zoning Verification Letter on which Eden Oak relies (Doc. 1, ¶ 31, at PageID 9; Doc. 1-1, Ex. D; also attached hereto as **Ex. 3**) does not supply the missing expectation. The letter was issued to a third party years before either plaintiff acquired the property. (Doc. 1, ¶¶ 8, 31, at PageID 4, 9) It

13

confirmed only that the property was "completely located in the Wetlands Future Land Use category" at a maximum density of one dwelling unit per twenty acres.  It also expressly cautioned that its determinations were "based on current regulations and may be subject to change." (Doc. 1-1, Ex. D) A letter that warns against reliance cannot be the foundation of a reasonable investment-backed expectation. *See* Lake, 2021 WL 5395924 at *7-8.

**C.    Count II Is Unripe.**

Count II is also unripe and subject to dismissal without prejudice under Rule 12(b)(1). Penn Central requires a final governmental determination before economic impact can be measured against a known regulatory baseline. Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985), *overruled in part by* Knick v. Township of Scott, 588 U.S. 180, 189 (2019). While Knick eliminated the state-litigation exhaustion requirement; the finality requirement remains. Knick, 588 U.S. at 188.

The County must be given "the opportunity, using its own reasonable procedures, to decide and explain the reach" of the challenged regulation. Lozman v. City of Riviera Beach, Fla., 119 F.4th 913, 917 (11th Cir. 2024), cert. denied, 145 S. Ct. 2751, 222 L. Ed. 2d 1044 (2025); *accord* Corey v. Rockdale Cnty., No. 23-13097, 2025 WL 1325325, at *4–5 (11th Cir. May 7, 2025) (unpublished). Eden Oak made one and only one site-plan specific application under Lee County LDC § 34-373(a): 55 single-family residences, 43 canal-front

14

boat slips, a 13-slip docking facility, roads, parking, surface-water management, and a canal system, all requiring destruction of approximately 43.63 acres of mangrove wetlands connected by a 20-foot-wide flushing culvert under Shell Point Boulevard. That specific proposal – with those specific environmental and design characteristics – was all that was denied. Eden Oak never sought an alternative site configuration as expressly permitted by Lee County LDC § 34-205. Lozman, 119 F.4th at 918. The County did not deny every configuration, just this one.

As set forth in Section I.B, *supra*, Eden Oak proposed to develop approximately 50 specific acres out of a 306-acre parcel. It never applied to develop a different portion of the property.

Eden Oak's sole futility allegation – "any additional or further County processes would be futile" (Doc. 1, ¶ 66, at PageID 17) – is exactly the kind of conclusory assertion that Ashcroft requires the Court to disregard. Ashcroft, 556 U.S. at 678. Lee County has never had the opportunity to apply its regulations to any alternative development plan for this property. The targeted-ordinance exception to ripeness applies only where the ordinance targets "precisely and only" an individual property. Lozman, 119 F.4th at 918. That is not this case. The denial rested on twenty-two findings of comprehensive plan violation – and Eden Oak itself alleges that eight other properties in the CHHA were approved for development. (Doc. 1, ¶¶ 93–94, at

15

PageID 22-23) The denial was driven by the plan Eden Oak proposed, and the property's specific physical and ecological characteristics, not by any targeting of Eden Oak. Corey, 2025 WL 1325325, at *3 (citing S. Grande View Dev. Co., Inc. v. City of Alabaster, Alabama, 1 F.4th 1299, 1307 (11th Cir. 2021)).

## III.    COUNT III (OLECH) – THREE INDEPENDENT GROUNDS FOR DISMISSAL

Count III alleges a class-of-one equal protection violation under the Fourteenth Amendment. Eden Oak alleges that the County "disallowed Eden Oak from developing its Property because it is in the Coastal High Hazard zone" while "permitting a number of other similarly situated properties to develop in the Coastal High Hazard zone." (Doc. 1, ¶ 93, at PageID 22) Eden Oak also generally alleges "reasonable investment-backed expectations" in Count III (Doc. 1, ¶ 87, at PageID 21), but investment-backed expectations are a takings factor, not an element of an equal protection claim. To the extent this allegation is relevant to any count, it is insufficiently pleaded. *See* Section II.B, *supra.*

### A.    Count III is Time-Barred.

Count III is brought under 42 U.S.C. § 1983 and is therefore subject to the same four-year limitations period that governs Counts I and II. *See* Section I.A, *supra*. Eden Oak's equal protection claim is premised on the County's alleged discriminatory application of the CHHA amendment – Policy 101.3.2 –

16

to Eden Oak's property. (Doc. 1, ¶¶ 93–94, 103–104, at PageID 22-23, 25) But Policy 101.3.2 was enacted on December 5, 2018. Eden Oak's own allegation that the amendment was enacted "to thwart the development of the Eden Oak Property" (Doc. 1, ¶ 37, at PageID 10) fixes the injury at enactment. To the extent Eden Oak challenges the policy as discriminatory, the claim accrued on that date and the four-year limitations period expired December 5, 2022 – more than three years before this complaint was filed.

**B.    The Denial Resolution Is Final and Binding; Eden Oak's Own Allegations Supply the Rational Basis.**

Eden Oak is bound by each of the BOCC's findings in the Denial Resolution attached to its complaint herein as Exhibit L – and as **Exhibit 2** hereto. A party who elects a damages action rather than direct review "foregoes any opportunity to challenge permit denial as improper and may not challenge agency action as arbitrary or capricious…" Key Haven Associated Enters., Inc. v. Bd. of Trustees of Internal Improvement Trust Fund, 427 So. 2d 153, 160 (Fla. 1982); *accord* Vatalaro v. Dep't of Envtl. Regulation, 601 So. 2d 1223, 1227 n.4 (Fla. 5th DCA 1992); Osceola Cty. v. Best Diversified, Inc., 936 So. 2d 55, 59 (Fla. 5th DCA 2006); *see also* § 163.3215(3), Fla. Stat. The Denial Resolution is final, binding, and unreviewable – and it forms the rational basis for the BOCC's decision. The CHHA restriction, in particular, was adopted pursuant to state legislative mandate. §163.3178(1), Fla. Stat. Eden Oak cannot

reasonably argue that a local regulation required by the state Legislature lacks a rational basis.

Where a plaintiff's own complaint is "filled with facts that suggest a rational basis for the defendant's actions," a court need not "ignore these facts in favor of [a] bald assertion that the defendants acted without any rational basis." Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1205 (11th Cir. 2007). "When the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Id. Eden Oak's sixty-plus paragraphs of regulatory history and the unanimously adopted Denial Resolution – twenty-two findings of comprehensive plan violation signed on to by all five commissioners – supply the rational basis Eden Oak must but fails to negate. Where plaintiffs themselves plead rational bases for the challenged action, they "defeat their own argument that it could not possibly be rational." Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo, Fla., 759 F. App'x 828, 838 (11th Cir. 2018) (applying Kentner v. City of Sanibel, 750 F.3d 1274, 1281 (11th Cir. 2014)).

## C.   No Similarly Situated Comparators.

Class-of-one comparators must be "prima facie identical in all relevant respects." Burns v. Town of Palm Beach, 999 F.3d 1317, 1352 (11th Cir. 2021). For complex multi-factor governmental decisions like the one in this case, that standard is especially demanding: comparators "must be very similar indeed," evaluated against "the full variety of factors that an objectively reasonable

18

governmental decisionmaker would have found relevant." Griffin Industries, Inc., 496 F.3d 1189, 496 F.3d at1205. Griffin explains that the successful Olech-line cases involved "one-dimensional" decisions – a single answer to a single question. Id. at 1203. The BOCC denial here was the opposite: twenty-two findings of comprehensive plan violation spanning CHHA, wetlands, FEMA flood hazard, federal coastal barrier restrictions, and smalltooth sawfish critical habitat, a Federally listed species, among others. (Doc. 1-2, Ex. L, §§ C.1–C.10, also attached hereto as **Ex. 2**)

Eden Oak's eight comparators are alleged to share only CHHA designation and some wetland impact. (Doc. 1, ¶¶ 93–94, at PageID 22–23) No comparator is alleged to share wetlands type, amount, quality and location, FEMA Flood Hazard status, federal coastal barrier designation, smalltooth sawfish critical habitat, or saltwater wetland quality – the criteria on which the BOCC acted. CHHA alone is insufficient under Griffin's multi-dimensional standard. Griffin Industries, Inc., 496 F.3d at 1204.

The lead comparator – 31 Oaks/Greenwell (DCI 2021-00050, Resolution Z-22-037), is not similarly situated in any relevant respect, as Eden Oak's Exhibit O to the instant complaint (inconsistently labeled as Exhibit R on the exhibit itself) establishes.[2] Greenwell is a 76.82-acre inland multi-family and

---

[2]     Eden Oak alleges that Greenwell was "recommended [for] approval" on "the same day Eden Oak's application was denied." (Doc. 1, ¶ 94(a), at PageID

commercial project located on State Road 31 in rural northeast Lee County –
geographically, ecologically, and regulatorily distinct from Eden Oak's coastal
peninsula site at the mouth of the Caloosahatchee River. (Doc. 1-3, Ex. O, Staff
Report, at PageID 493–94; HEX Recommendation, at PageID 498) Specifically:
Greenwell has no restrictive federal coastal barrier designation; its protected
species survey "yielded no evidence of protected species on the site" (Doc. 1-3,
at PageID 504) while Eden Oak's property is designated critical habitat for the
federally listed smalltooth sawfish; its wetland impacts were limited to 2.89
acres of freshwater wetlands while Eden Oak proposed to destroy 43.63 acres
of mangrove swamp, saltwater marsh, and tidal wetlands; it proposed no canal
system; and staff recommended approval, finding it consistent with the Lee
Plan, while staff recommended denial of Eden Oak for violation of more than
twenty Lee Plan provisions. Eden Oak's own exhibit thus establishes that its
lead comparator shares none of the regulatory criteria that drove the denial in
this case. Burns, 999 F.3d at 1352; Maverick Enters., LLC v. Frings, 456 F.
App'x 870, 871–72 (11th Cir. 2012).

---

23) That is misleading. Resolution Z-22-037, the Greenwell approval attached
to the complaint as Exhibit O (tab R), was declared void because the initial
Hearing Examiner hearing "was not properly advertised." The BOCC
conducted an entirely new hearing process – a rehearing before the Hearing
Examiner on June 9, 2023, followed by a second BOCC hearing on June 21,
2023 – before issuing a superseding resolution. The Greenwell exhibit that
Eden Oak relies on as its lead comparator is a nullity.

## IV. IN THE ALTERNATIVE – STAY ALL COUNTS UNDER <u>COLORADO RIVER</u>

Where parallel state and federal proceedings exist, a federal court may stay in favor of the state action when doing so serves "the interests of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). Courts weigh six factors, applied flexibly and with no single factor determinative. <u>Ambrosia Coal & Const. Co. v. Pages Morales</u>, 368 F.3d 1320, 1331 (11th Cir. 2004); <u>Taveras v. Bank of Am., N.A.</u>, 89 F.4th 1279, 1286–87 (11th Cir. 2024).

**Proceedings Are Parallel.**

Concurrent actions are parallel "when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." <u>Antosh v. Vill. of Mount Pleasant</u>, 99 F.4th 989, 993–94 (7th Cir.), <u>cert. denied sub nom.</u> <u>Antosh v. Vill. of Mount Pleasant, Wisconsin</u>, 145 S. Ct. 985, 220 L. Ed. 2d 361 (2024). Both actions involve the same parties, the same property, the same governmental action and the same $28+ million diminution figure. **With the exception of jurisdictional allegations and two forum-specific paragraphs, every factual allegation in the federal complaint – all 67 pre-count paragraphs – is copied verbatim or nearly verbatim**

21

**from the state complaint Eden Oak filed ten months earlier.** (*Compare* Doc. 1, ¶¶ 1–69, at PageID 1-18 *with* State Ct. First Am. Compl. ¶¶ 1–75, Ex. 1 hereto.)

**Factor 1 – Jurisdiction over property. Favors stay.**

A Bert Harris Act judgment does not merely award damages, it also transfers property rights. The court "shall determine the form and the recipient of the right, title, and interest" in use rights, which "operate to grant to and vest in" the governmental entity those rights. § 70.001(7)(b), Fla. Stat. Through that mechanism, a Bert Harris Act judgment operates as a conveyance of title to use rights from the landowner to the governmental entity. The Lee County Circuit Court assumed jurisdiction over these specific parcels in May 2025, about a year ago. Taveras, 89 F.4th at 1287.

**Factor 2 – Inconvenience of federal forum. Neutral.**

Both courts sit in Fort Myers. Witnesses, documents, and counsel are equally convenient to both forums.

**Factor 3 – Piecemeal litigation. Strongly favors stay.**

Both proceedings require resolution of the same factual questions: did the April 5, 2023 denial cause compensable diminution in value, and what were Eden Oak's reasonable investment-backed expectations? Two factfinders reaching different conclusions on identical facts about the same property is the paradigm case of piecemeal litigation raising "property-specific concerns."

Taveras, 89 F.4th at 1287–88. Knick left San Remo's preclusion analysis intact. Warner v. City of Marathon, No. 24-10901, 2025 WL 1502666, at *6 (11th Cir. May 27, 2025); *accord* Ocean Palm Golf Club P'ship v. City of Flagler Beach, 861 F. App'x 368, 371 (11th Cir. 2021). Under 28 U.S.C. § 1738, state court findings on diminution in value, investment-backed expectations, and character of the denial will collaterally estop relitigation of those issues here regardless of outcome. San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal., 545 U.S. 323, 336–37, 125 S. Ct. 2491, 162 L. Ed. 2d 315 (2005).

**Factor 4 – Order of jurisdiction and relative progress. Favors stay.**

Eden Oak chose state court first. The state case has been litigated for over a year: Bert Harris notice February 2024; First Amended Complaint May 2025; discovery ongoing; summary judgment fully briefed, argued, and denied; trial set October 2026. The federal complaint was filed March 19, 2026 – sixteen days after the state court's summary judgment ruling, seven months before trial.

**Factor 5 – State vs. federal law. Favors stay.**

Although Eden Oak's claims are cast in federal constitutional terms, the underlying dispute travels on Florida's comprehensive plan framework – consistency requirements, Goals Objectives and Policies, vested rights doctrine, and inordinate burden analysis – a uniquely Florida statutory scheme with no federal analog that has been actively litigated in state court

23

for over a year. Jackson-Platts v. Gen. Elec. Cap. Corp., 727 F.3d 1127, 1143 (11th Cir. 2013). Zoning matters are "inherently within the domain of local governments," and § 1983 claims here are "inextricably intertwined with the issues being considered by the state court." Redner v. City of Tampa, 723 F. Supp. 1448, 1454 (M.D. Fla. 1989).

**Factor 6 – Adequacy of state forum. Favors stay.**

Florida provides adequate remedies to protect Eden Oak's property rights.  Florida Article X, § 6 provides relief "sufficiently similar to the parallel claim under the United States Constitution so as to constitute identical claims for res judicata purposes." Treister v. City of Miami, 893 F. Supp. 1057, 1067 (S.D. Fla. 1992), aff'd sub nom. Triester v. Suarez, 56 F.3d 1389 (11th Cir. 1995). The Bert Harris Act provides relief even for governmental actions that "may not rise to the level of a taking under the State Constitution or the United States Constitution." § 70.001(9), Fla. Stat. A forum offering broader relief than this Court is **not** inadequate. Eden Oak *itself* believed state court was adequate.

## CONCLUSION

Every claim in this complaint is time-barred, inadequately pleaded, or unripe – and several are all three.  All are duplicative of a state court action seven months from trial. Lee County respectfully requests that the Court: (1) dismiss Count I with prejudice; (2) dismiss Count II with prejudice as time-

24

barred, or in the alternative without prejudice for lack of subject-matter jurisdiction; (3) dismiss Count III with prejudice; (4) award attorneys' fees under 42 U.S.C. § 1988 as to Counts I, II (if dismissed with prejudice), and III; and (5) in the alternative, stay all counts pending final judgment in Case No. 25-CA-1676, Twentieth Judicial Circuit, with either party permitted to move to lift the stay upon entry of judgment in that action.

Dated this _____ day of _____, 2026.

Respectfully submitted.

/s/ Jeffrey L. Hinds
Jeffrey L. Hinds
Florida Bar No. 0008710
Bartlett Loeb Hinds & Thompson, PLLC
1001 Water Street, Suite 475
Tampa, FL 33602
(813) 223-3888
jeffreyh@blhtlaw.com
jayb@blhtlaw.com
kathrynd@blhtlaw.com
Attorney for Defendant, Lee County, Florida

## LOCAL RULE 3.01(g) CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 3.01(g), the undersigned certifies that counsel for Defendant Lee County conferred with counsel for Plaintiffs by email dated April 28, 2026 regarding the relief requested in this motion. Counsel for Plaintiffs indicated that Plaintiffs oppose the motion.

25

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES 1.08(a) and 3.01(a)-(b)

Pursuant to Local Rules 1.08(a) and 3.01(a)-(b), the undersigned certifies that this motion and incorporated memorandum of law complies with the typeface and pagination requirements of those rules: it has been prepared in Century Schoolbook 13-point font and does not exceed twenty-five pages, excluding the caption, signature block, certificates, and exhibit list.

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Jeffrey L. Hinds
Jeffrey L. Hinds
Florida Bar No. 0008710

Exhibits

- Exhibit 1 – State Court First Amended Complaint, *Eden Oak I, LLC and Eden Oak Shell Point, LLC v. Lee County, Florida*, Case No. 25-CA-1676, Twentieth Judicial Circuit (**certified**, without exhibits).

- Exhibit 2 – Resolution Z-18-016 dated April 5, 2023

- Exhibit 3 – Zoning Verification Letter dated July 29, 2005