# Exhibit 1



# Electronically Certified Court Record

This is to certify that this is a true and correct copy of the original document, which may have redactions as required by law.

## DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Lee County Clerk of the Circuit Court and Comptroller |
| **Clerk of the Circuit Court:** | The Honorable Kevin C. Karnes |
| **Date Issued:** | 4/2/2026 9:09:00 AM |
| **Unique Reference Number:** | CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D |
| **Case Number:** | 362025CA001676A001CH |
| **Case Docket:** | Amended Complaint |
| **Requesting Party Code:** | 506 |
| **Requesting Party Reference:** | shurst@leegov.com |

## CERTIFICATION

Pursuant to Sections 90.955(1) and 90.902(1), Florida Statutes, and Federal Rules of Evidence 901(a), 901(b)(7), and 902(1), the attached document is electronically certified by The Honorable Kevin C. Karnes, Lee County Clerk of the Circuit Court and Comptroller, to be a true and correct copy of an official record or document authorized by law to be recorded or filed and actually recorded or filed in the office of the Lee Clerk of the Circuit Court. The document may have redactions as required by law.

## HOW TO VERIFY THIS DOCUMENT

This document contains a Unique Reference Number for identification purposes and a tamper-evident seal to indicate if the document has been tampered with. To view the tamper-evident seal and verify the certifier's digital signature, open this document with Adobe Reader software. You can also verify this document by scanning the QR code or visiting https://Verify.Clerkecertify.com/VerifyImage .

**The web address shown above contains an embedded link to the verification page for this particular document.



Filing # 222297359 E-Filed 05/02/2025 11:32:04 AM

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 1 of 19

**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT**
**IN AND FOR LEE COUNTY, FLORIDA**
**CIVIL ACTION**

**EDEN OAK I, LLC, AND EDEN OAK SHELL POINT, LLC**
**Florida Limited Liability Companies,**

    **Plaintiffs,**

**v.**
                                   **CASE NO.: 25-CA-001676**

**LEE COUNTY, FLORIDA, a Florida Charter**
**County**

    **Defendant.**

---

### FIRST AMENDED COMPLAINT

    EDEN OAK I, LLC, and EDEN OAK SHELL POINT, LLC, by and through their undersigned attorneys, files is First Amended Complaint, and hereby sue LEE COUNTY, FLORIDA, based upon the following allegations:

### Jurisdiction

    1.    This is a "Bert J. Harris, Jr., Private Property Rights Protection Act" ("Bert Harris") claim pursuant to § 70.001, *et seq.,* Florida Statutes (2025).

    2.    This Bert Harris claim arises from the denial of a land use application for the "Eden Oak Property."[1]

    3.    This Court has jurisdiction pursuant to Article V, Section 5(b) of the Florida Constitution (1968), section 26.012, Florida Statutes (2025), section 70.001, Florida Statutes (2025), and the amount in controversy exceeds $50,000.00.

    4.    Plaintiffs, EDEN OAK I, LLC and EDEN OAK SHELL POINT, LLC, (collectively "Eden Oak") are active Florida Limited Liability Companies in good

---

[1] Defined *infra* at ¶ 8.

standing and duly authorized to do business in Florida. Eden Oak is authorized to own real property, and its ownership is protected by the laws of Florida.

5. Defendant, Lee County, Florida (the "County"), is a Florida Charter County operating pursuant to Article VIII, Section 1, Florida Constitution, and Title XI, Florida Statutes (2025), authorized with governmental, corporate, and proprietary powers. Whenever any action is alleged in this Complaint as performed by the County, if the action was carried out by the County's Board of County Commissioners, County Manager, officers, agents, contractors, subcontractors, servants, or employees, the same is considered to have been done within the scope of authority, control, agency, or employment by the County itself.

6. Pursuant to section 47.011, Florida Statutes (2025), venue is proper in the Twentieth Judicial Circuit in and for Lee County, Florida. Lee County is where Defendant "resides," where the subject Property is located, and where the complained-of actions occurred.

### The Property

7. Eden Oak owns seven contiguous and adjacent parcels of land in unincorporated Lee County, on a southern peninsula where the mouth of the Caloosahatchee River meets the Matlacha Pass and San Carlos Bay.

8. The parcels are identified by the Lee County Property Appraiser as:

Eden Oak I, LLC
> 33-45-23-00-00002.0010
> 33-45-23-00-00002.0020
> 34-45-23-00-00001.0000
> 04-46-23-00-00003.0000
> 04-46-23-00-00004.0000

2

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 3 of 19

Eden Oak Shell Point, LLC
34-45-23-00-00001.0020
34-45-23-00-00001.0060

Together, they comprise approximately 306+/- (306) total acres. (The "Eden Oak Property" or the "Property".)

9. The Eden Oak Property lies primarily on the west side of Shell Point Boulevard about 1 ¼ mile north of the intersection of Shell Point Boulevard and McGregor Boulevard; then proceeding northwest it encompasses both sides of the Boulevard, at 16500 & 16501 Shell Point Blvd., Iona/McGregor Planning Community, Lee County, Florida. (See Composite **Ex. A (**Aerial Maps).)

10. Eden Oak I, LLC acquired its parcels on or about October 24, 2013, and Eden Oak Shell Point, LLC acquired its parcels on or about September 11, 2008. However, Eden Oak's beneficial owner's interest in the Property predates these acquisitions.

### History of the Property and Surrounding Development

11. In 1960 a plat was filed in the records of Lee County, Florida showing 335 platted residential lots for the development of the Eden Oak Property (at that time called "Palm Acres), at Book 1 page 218, Records of Collier County, Florida. **(Ex. B.)**

12. When Lee County first initiated zoning in 1962, the Eden Oak Property was zoned AG (agriculture) (which is considered Countywide as the background zoning district), like most of the surrounding lands, which have subsequently been developed.

3

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 4 of 19

13.     The Eden Oak Property has not been in its natural condition unaltered by man since at least 1958. Instead, it has been environmentally degraded by agricultural use, repeated deforestation, dumping, excavation (including "mosquito ditching"), ground build-up, hydrological degradation, canaling, the proliferation of exotics, and other development activity. As a result, today the land is a far cry from pristine and has little conservation or environmental value.

14.     Historic aerials reveal the construction of Shell Point Boulevard and extensive mosquito ditching between 1958 and 1966. (**Ex. F,** Application, Environmental Report**, p. 84**[2]; compare, **Ex. A 3** and **Ex. A 4**).

15.     Spoil cast alongside mosquito ditches formed intermittent spoil piles.

16.     Between 1966 and 1968, developers cleared the trees and shrubs on Palm Acres and on Eden Oak property west of Shell Point Boulevard. Developers constructed land bridges across mosquito ditches to allow heavy equipment access. **(Ex. F, p. 84.)**

17.     By 1972, developers cleared the Eden Oak Property a second time, completed "key cuts" defining the Eden Oak canal system west of Shell Point Boulevard, and constructed a berm around the perimeter of Eden Oak (west). **(Ex. F, p. 88.)**

18.     Between 1981 and 1986, cleared areas were re-populated with vegetation and cleared a third time.  **(Id.** and **Ex. H, p. 8.)**

---

[2] For ease of reference, unless otherwise specified, all page numbers refer to the page number of the attached pdf exhibit and not the internal page numbers on the documents within the exhibit.

4

19.     Following the third clearing, the site re-populated with vegetation consisting of exotics, sapling mangroves, and other wetland species. Exotic vegetation colonized the spoil piles from the mosquito ditching on the east side of Shell Point Boulevard. Exotics in this area include Melaleuca and Brazilian pepper. Exotics remain on the spoil areas include Australian pine, melaleuca, and Brazilian pepper. **(Id.** and **Ex. H, p. 8.)**

20.     What wetlands exist today are not of high quality and have substantially degraded from the historic baseline.  **(Ex. F, p. 114.)**

21.     At least since 1972 the Property has had horizontal development and was built up for a finger and thumb of homes along canals. The spoil piles from mosquito ditching were reclassified as uplands thereby allowing an additional 8.26 acres to contribute to allowable density based on the Suburban Future Land Use category. The reclassification was pursuant to Lee Plan Chapter XIII.b.1.b and premised on a jurisdictional determination issued by South Florida Water Management District. **(Exs. A; C** (Boundary Topographic Survey), **pp. 2-3; F, p. 1; and H, p. 7**.**)**

22.     Residential (including dense multi-family) and commercial development has historically been allowable for adjacent and nearby properties to the north of the Eden Oak Property, e.g., the Palm Acres Subdivisions and the Shell Point Retirement Community. Economic growth has spawned in conformity with the County's Future Land Use Map (FLUM) which currently permits these uses as a matter of right. **(Ex. K.)**

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 5 of 19

5

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 6 of 19

23.    Portions of the Eden Oak Property (especially the area Eden Oak proposed development, *see infra*) were part of an approximately 388 single-family residential lots.

24.    The lands to the *north* are Suburban and Wetlands are zoned agricultural and single family.  The Palm Acres residential community with single family homes and boat docks abuts the Eden Oak Property to the north and further north is the Shell Point Retirement Village. **(Ex. E** (Staff Report)**, p. 2,** and **Ex. F, p. 84.)**

25.    To the immediate *west* of the Eden Oak Property are designated Wetlands and Conservation Lands (Uplands and Wetlands) by the Lee Plan and are zoned Agricultural (AG-2). These properties are undeveloped and are vacant with respect to use.). **(Ex. E, p. 3.)**

26.    The lands immediately to *south* of the Eden Oak Property are designated Wetlands by the Lee Plan and are zoned Agricultural (AG-2) (see Attachment B). The properties are undeveloped conservation areas associated with the Shell Point Development of Regional Impact (DRI) and are predominantly owned by the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida (TIITF). **(Ex. E, p. 2.)**

27.    To the *southeast*, on the east side of Shell Point Boulevard are several mid-rise, multi-story, residential buildings, a large, assisted living facility, and then single-family homes. (**Ex. E, p. 2**.)

6

28.     To the *east* of the Eden Oak Property across the canal are single-family homes zoned Residential Planned Development and Planned Unit Development. **(Ex. E, p. 2.)**

29.     When Eden Oak purchased it's the Property, a substantial portion was designated "Wetland" on the County's Future Land Use Map and was zoned Agricultural (AG-2); and, another small portion adjacent to Shell Point Boulevard was within the Suburban Future Land Use Map. **(Exs. D** (Zoning Verification Letter)**; and E, p. 2.)**

30.     The Eden Oak Property was originally designated "Wetlands" by Lee County in 1986 because of an inaccurate perception that the Property was too wet. No formal wetlands determination was conducted at that time. It wasn't until after Eden Oak acquired the Property, that the South Florida Water Management District issued a formal Wetlands Determination in 2018, but only corrected a small portion of the incorrect designation on the Eden Oak Property, Application No. 180606-618, Permit No. 36-100612-P. **(Ex. G.)**

31.     Historically, Wetlands designations have been rezoned by Lee County. For example, in 2002 the County rezoned about 136.68 acres just South of the Eden Oak Property abutting San Carlos Bay, known as Siesta V. Siesta V was in the Suburban and Wetlands Use Categories and was rezoned from AG-2 to Residential Planned Development, to allow 47 single-family detached dwelling units along with boat slips and docks. In 2016, the County allowed the Palm Acres Subdivision, of which the Eden Oak Property abuts and was once a part of, to develop Unit 2. To take another

7

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 7 of 19

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 8 of 19

example, just on the north side of McGregor Boulevard was rezoned from AG-2 to the Island Passage Planned Development.

32.     The adjacent Shell Point Blvd. development now has been developed with over 3000 units, a new 12-story high-rise, and a golf course.

33.     On July 29, 2005, Lee County issued a Zoning Verification Letter to Eden Oak (ZLV2005-00167) pertaining to Strap #34-45-23-00-00001.0060, with AG-2 zoning, which among other things allowed development of single-family homes.  **(Ex. D)**

34.     In 2007, Eden Oak submitted its Property for consideration for acquisition under the County's Conservation 2020 Program. The Conservation 2020 Committee did not recommend acquisition. **(Ex. H, p. 8 n23.)**

### Land Use & Zoning Changes After Purchase and Development Application

35.     On December 16, 2016, Eden Oak filed its application to rezone the Property for development, of 55 single-family homes and related facilities, which was given #DCI2016-00026.  (See, **Ex. F** (Initial Application).)

36.     Eden Oak's application was found sufficient by Lee County on May 19, 2018.

37.     Since Eden Oak first submitted its application for development, Lee County has amended its Comprehensive Plan and zoning several times. **(**See, e.g., **Ex. E, p. 1.)** (saying, "The staff report for the subject case was published on May 4, 2018. The Lee Plan has been amended several times since the publication of the original staff report.").

8

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 9 of 19

38.     On December 5, 2018, the County adopted Policy Amendments, to the Comprehensive Plan's Conservation and Coastal Management Element, restricting development in "Coastal High Hazard Areas" to uplands, including Policy 101.3.2. (**Ex. I.)**

39.     On December 5, 2018, Lee County amended its Comprehensive Plan's Conservation and Coastal Management Element to inter alia thwart the development of the Eden Oak Property. (**Ex. H, p. 9.)**

40.     The Comprehensive Plan amendment included Policy 101.3.3 restricting development in the Coastal High Hazard Areas to uplands, the only exception was for "public facilities". **(**See discussion, **Ex. H, p. 9.**)

## Administrative Interpretation

41.     Eden Oak's application went to a Hearing Examiner, who held a hearing, with continued hearings over three years, on October 23, 2019, and December 3, 2019, January 7, 2020, and July 12, 2022. (**Ex. H.)**

42.     After the January 7, 2020, hearing the case was remanded to staff for an Administrative Interpretation of the Lee County Comprehensive Plan. (**Ex. I.)**

43.     The Comprehensive Plan, Chapter XIII, contains an "Administrative Interpretations" section which affords landowners the opportunity to obtain a formal determination on an array of development related issues. These interpretations are intended to expedite and reduce disputes over plan interpretations, resolve certain

9

map or boundary disputes, avoid unnecessary litigation, ensure consistency in Plan interpretation, and provide predictability.

44.    Under Chapter XIII, b, 1, b, of the Lee Plan one matter reviewable as an Administrative Interpretation is: "Whether a parcel has been properly designated within the Wetlands future land use category."

45.    The Administrative Interpretation formally acknowledged the Jurisdictional Determination that certain uplands were erroneously classified as wetlands on the Lee Plan Future Land Use Map. (**Ex. I.)**

46.    On June 29, 2022, the Staff issued an Order of Remand Status Report Eden Oak) (DCI2016-00026), determining that the Eden Oak Property was entitled to 64 dwelling units, and thus the proposed 55 dwelling units was "CONSISTENT with Lee Plan Policies 1.1.5 and 1.5.1 as it relates to density." (**Ex. I.)**

47.    Meanwhile, the County renewed, but did not consummate, efforts to acquire the Property under the Conservation 20/20 Program. (See, https://www.leegov.com/parks/conservation2020.)

### HEX Determination: Coastal High Hazard Area Denial

48.    The Hearing Examiner held another hearing on July 12, 2022. At that hearing, Eden Oak argued that Lee County was estopped from denying its request for a Comprehensive Land Use Amendment, because the Coastal High Hazard Area Policy, Policy 101.3.2, was proposed and enacted after Eden Oak had submitted it application. (**Ex. H, p. 9.)**

10

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 10 of 19

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 11 of 19

49.    On August 15, 2022, the Lee County Hearing Examiner issued a formal recommendation that Eden Oak's application be denied saying it was not consistent with the amended Coastal High Hazard Area policy. (The "HEX") (**Ex. "H".**)

50.    The HEX declined to rule on Eden Oak's estoppel issue on the grounds that Lee County had not delegated equity issues to the hearing examiner when reviewing zoning applications. (**Ex. H, p. 9, n28**.)

**County Commission Refuses to Consider Vested Rights and Denies Application**

51.    On April 5, 2023, the Lee County Board of County Commissioners held a hearing on the HEX recommendation regarding the Eden Oak Property.

52.    Eden Oak expressly requested review of its estoppel claim at the hearing, which request was in the agenda packet. (**Ex. J** (Hearing Packet)**, p. 6.)**

53.    At the County Commission hearing, despite the long history of alteration of the Eden Oak Property by mankind, staff opposed the rezoning on environmental preservation grounds. Staff summarized its recommendation thusly:

> The request, as proposed, is inconsistent with the Goals, Objectives, and Policies related to the protection and enhancement of wetlands, the protection of wildlife habitat, the protection of life and property, the limitation of public expenditures within Coastal High Hazard Areas, and development within coastal planning areas established by the Lee Plan. The request, if approved, will adversely affect environmentally critical and environmentally sensitive areas and natural resources, and presents compatibility-related concerns to adjacent uses as a result of these adverse environmental impacts.

**(Ex. J, p. 74.)**

11

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 12 of 19

54.     The staff analysis was filled with numerous other substantial errors – perhaps driven by the County's desire to keep the Eden Oak Property in its so-called "natural condition."

55.     For example, the staff found inconsistency because the final approval from federal and state authorities for the development had not yet been obtained. Plaintiff's ability to obtain approval from State and Federal regulatory agencies who monitor wetland impacts is irrelevant to the instant matter insofar as it must first obtain land use development approval at the local level, which in this case have been denied and is contrary to Florida law. It is noteworthy that all such agencies, including by not limited to, the Florida Department of Environmental Protection, South Florida Water Management District, and U.S. Army Corps of Engineers, afford an owner reasonable mitigation options when wetlands may be impacted by development. Further, permitting is not needed to fill wetlands created by mosquito ditching. F.A.C. § 62-340-750.

56.     Indeed, in this case the federal and state governments had preliminarily and informally already recommended the development limits set for in Eden Oak's Application, which was the reason Eden Oak proposed development of only 55 single-family units on the 306+/- acre Property.

57.     Eden Oak had proposed to develop only Fifteen Percent (15%) of the Property.

58.     Eden Oak proposed to place 259 acres in a preserve and restore the area's hydrology for many indigenous species, including but not limited to mangroves, the

12

growth of which had been stunted by the history hydrological degradation; and offered to install a culvert under Shell Point Boulevard, which had been agreed to by the County in a federal lawsuit and which had been recommend by the federal government; all which would have improved surrounding water quality by creating flushing of substandard waters in the vicinity.

59.    Despite proposing to develop only a small fraction of its property and to dramatically improve the environmental conditions on the land and waters, the Board of County Commissioners outright denied Eden Oak's application for development.

60.    This modest proposed development was objected to at the several hearings by many persons, many of whom resided in one or more of the densely-developed facilities owned by the Shell Point Retirement Community, and some owners of single-family residences that are actually similar to Eden Oak's proposed development.

61.    No discussion or reason for the denial of Eden Oak's estoppel claim was had by the Board of County Commissioners at the hearing **(Ex. M** (Minutes and Transcript of Hearing)) or was included the Resolution of Denial. **(Ex. L** (Resolution Z-18-016)**).**

62.    On February 1, 2024, Eden Oak timely served a Bert Harris J. Harris Private Property Rights Protection Act ("Bert Harris") claim under section 70.001, Florida Statutes (2024), upon Lee County. **(Ex. O.)**

13

**Lee County Issued Its Statement of Allowable Uses**

**63.** On April 9, 2024, in response to the Bert Harris claim, the County issued its Statement of Allowable Uses. **(Ex. P.)**

64. The County's Statement of Allowable Uses omitted any discussion of Eden Oak's vested property rights or reasonable investment backed expectations for use of its Property.

65. The Statement of Allowable Uses is also inconsistent with the County's Commissions final denial with prejudice of Eden Oak's development application on the basis that only "public facilities" could be built in the Coastal Hazard Area, pursuant to Comprehensive Plan, Policy 101.3.3.

66. The Property is unsuitable for most agricultural purposes due to the high ground salinity.  Crops of any value cannot grow in the ground covering most of the Property.

**All Attempts to Gain Approval have now been Exhausted and are Final**

67. The County's application of its Land Use regulations is now clear and final.

68. In fact, the motion made by Commissioner Ruane, and passed by the Board, made it clear that the Property was not ever to be developed nor would the request for review of estoppel be granted.

21 · ·My request, obviously, is for a denial.
22 · ·It's inconsistent with the goals, objectives and policies

14

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 15 of 19

that, obviously, I stated earlier relative to protection
of enhancement of wetlands, protection of wildlife
habitat, protection of property, limitation of public

access. · And we heard, whether weakened or not, the --
obviously, the mangroves did exactly what they were
intended to do. · And with that in mind, my motion is for
a complete denial.

(**Ex. N**, (Hearing Transcript, Motion of Comm. Ruane), pp. 82-83.)

69.     On April 5, 2023, Lee County first and finally applied its land use regulations to the Eden Oak Property. (**Ex. L,** Denial Resolution**)**

70.     Eden Oak had reasonable investment-backed expectations for its use of the Property, having invested over $10 million in property acquisition, engineering, land use consultants, and other costs to develop the Property.

71.     The County's action has caused a diminution in value of at least $28 million dollars to Eden Oak's Property, as calculated below. (See Appraisal, **Ex,. O, at its attachment A**.)

72.     The County's regulatory framework as applied to the Eden Oak Property absolutely prohibits, or at the very least has greatly diminished, Eden Oak from enjoying reasonable economic use.

73.     Any additional or further County processes would be futile.

74.     All administrative remedies and conditions precedent have been exhausted and thus the resulting issue is ripe for adjudication by the Court.

75.     There is now no question about how the County applies its regulations at issue to the land in question, the Eden Oak Property, and the County's position is final.

15

76.     Eden Oak has incurred attorneys' fees and costs in bringing this action and is entitled to recovery of the same under Section 70.001, Florida Statutes (2024).

## COUNT I
**(BERT HARRIS CLAIM)**

77.     Eden Oak re-alleges and re-incorporates the allegations contained in Paragraphs 1 through 76, hereinabove, as if fully restated here.

78.     Section 70.001, Florida Statutes (2024), provides relief for private property owners where governmental action inordinately burdens an existing use of real property, which may include compensation for the actual loss of fair market value caused by such action.

79.     Eden Oak had reasonable investment backed expectations that it would be able to develop its land as requested, due the land being platted over 60 years ago, the build-out of most of those platted lands over time, the history of being built out before it acquired the land, the relatively minimal development requested of the County, the fact that the County had not refused any previous applications for similarly situated land in the area, the degree to which the land had been detrimentally altered by mankind, the extensive environmental improvements to the land proposed by Eden Oak, and the pattern of development of adjacent and nearby properties in the neighborhood.

80.     Single-family residential density in the manner proposed was a reasonably foreseeable, non-speculative land use to be enjoyed on the Eden Oak Property.

16

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 17 of 19

81.    Eden Oak had reasonable investment-backed expectations for its use of the Property, having invested over $10 million in property acquisition, engineering, land use consultants, and other costs to develop the Property.

82.    Lee County's application of its land use regulations has inordinately burdened existing allowable uses of the Property.

83.    The term "existing use" includes those reasonably foreseeable, non-speculative land uses which are suitable for the Eden Oak Property, compatible with adjacent uses, and which have created an existing fair market value in the Property greater than the fair market value of the present use or activity occurring on the Property.

84.    Eden Oak also possesses a "vested right to a specific use" of its real property free of the comprehensive plan amendments enacted after its application to the develop the Property.

85.    The County's application of its land use regulations has caused an extreme loss in value to the Eden Oak Property or has regulated Eden Oak out of most economic use of the Eden Oak Property, inordinately burdening its rights.

86.    The County's application of its land use regulations, in denying Plaintiff's development petition has decreased the value of Eden Oak's Property from at least $29,870,000 to not more than $1,275,000.00 for a diminution of value of at least $28,595,000.00, based on Eden Oak's appraisal; and it is probable that the fair market

17

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 18 of 19

value after the County's denial is actually much less than that recited in Eden Oak's appraisal.

87. Eden Oak is left with mere nominal uses for the Eden Oak Property that are entirely unreasonable, resulting in a substantial loss in fair market value.

88. Pursuant to section 70.001(11)(a)(2), Florida Statutes (2024), the County finally applied its regulations to the Eden Oak Property on April 5, 2023, at a quasi-judicial proceeding by formally denying Eden Oak's development application. (**Ex. L**, Resolution Z-18-0186.)

89. All conditions precedent to bringing this claim have been satisfied, as required by section 70.001(4)(a), Florida Statutes (2025), including: (a) the filing of a claim letter to the Board of County Commissioners (through its chair) and County Manager with a copy to the County Attorney; and (b) the attachment of a *bona fide*, valid appraisal demonstrating the diminution in fair market value. Eden Oak's claim is therefore timely under section 70.001(11), Florida Statutes (2025).

90. The County issued its ripeness decision, i.e., its Statement of Allowable Uses on April 9, 2024. As a matter of law, this writing constitutes the last prerequisite to judicial review, notwithstanding the availability of other governmental remedies.

91. Eden Oak rejected the County's "Statement of Allowable Uses."

WHEREFORE, Eden Oak prays that this Court grant relief by: (a) determining that Eden Oak possessed an "existing use" (or alternatively, a vested right to a specific use) consistent with its Application as of the effective date of the County's

18

actions described above; (b) determining that the County has inordinately burdened said use through its regulatory actions; (c) empaneling a jury to determine the total amount of compensation due Eden Oak for the loss in value; and (d) awarding any other supplemental relief, including but not limited to pre- and post-judgment interest, costs, and attorney fees, as this court deems just and proper.

**Jury Demand**

Eden Oak hereby makes demand for a jury in this case for all issues so triable.

Respectfully submitted this 2nd day of May, 2025.

ROETZEL & ANDRESS, LPA

*s/James D. Fox*
JAMES D. FOX, ESQUIRE
Florida Bar No. 689289
MIKALA A. MAKAR, ESQUIRE
Florida Bar No. 1025225
999 Vanderbilt Beach Road, Suite 401
Naples, Florida 34108
Telephone: (239) 649-6200
Facsimile: (239) 261-3659
jfox@ralaw.com
serve.jfox@ralaw.com
mmakar@ralaw.com
serve.mmakar@ralaw.com
*Attorneys for Eden Oak I, LLC, and Eden Oak Shell Point, LLC, Florida Limited Liability Companies*

19

Unique Code : CAA-FAG-BCAHB-EIFBFBJB-BEGICIF-D Page 19 of 19