IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

EDEN OAK, I, LLC, AND EDEN OAK    :    CASE NO. 2:26-CV-00789-SPC-NPM

SHELL POINT, LLC.

        PLAINTIFFS,

V.

LEE COUNTY, FLORIDA,

        DEFENDANT.

------------------------------------------------------

**PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS OR TO STAY**

Plaintiffs, Eden Oak I, LLC, and Eden Oak Shell Point, LLC (hereinafter "Plaintiffs" or "Eden Oak"), by and through counsel, and hereby submit their Brief in Opposition to Defendant's Motion to Dismiss Counts I, II, and III and Alternative Motion to Stay All Counts Pending Resolution of State Court Action [Dkt. 12]. In support thereof, Plaintiffs state the following.

I. <u>Introduction</u>

On March 19, 2026, Plaintiff filed a three (3) Count Complaint under 42 U.S.C. section 1983 against Defendant Lee County (hereinafter "Defendant" or "Lee County"). Count I alleges a categorical taking pursuant to the regulatory standards set forth in *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003 (1992)

and brought under the Fifth and Fourteenth Amendments of the United States Constitution. Count II also alleges a partial regulatory taking pursuant to the several factors and criteria set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1977) and brought under the Fifth and Fourteenth Amendment of the U.S. Constitution. Count III alleges a "class of one" equal protection under the Fourteen the Amendment of the United States Constitution under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

## II. <u>Facts Alleged in the Complaint</u>

The case at issue is fact intensive. Therefore, in light of Defendant's Motion to Dismiss, it is important to set forth the alleged facts which will show the necessity for *ad hoc* fact findings in a takings case, such as this one, consistent with the criteria set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. at 124. This will show that a motion to dismiss is inappropriate at this stage of the proceedings. Among the facts alleged are:

1.      Plaintiffs own seven (7) contiguous and adjacent parcels in Lee County. Collectively, comprises approximately 306 total acres of property.

2.      Plaintiff Eden Oak Shell Point, LLC acquired its parcels on or about September 11, 2008.

3.      Eden Oak, I, LLC acquired its parcels on or about October 24, 2013. (See, [Dkt. 1], Complaint, at paragraphs 5-8).

2

4.      On December 16, 2016, Plaintiffs filed an application to rezone their property for the purpose of developing fifty-five (55) single family homes and related facilities.

5.      On May 16, 2018, Eden Oak's application was found sufficient by Lee County. (See, [Dkt. 1], Complaint, at paras. 33-34, and its Exhibit F- the Initial Application).

6.      Since the filing of Eden Oak's application to develop their property in December 2016, Lee County has amended its Comprehensive Plan several times.

7.      For example, on December 5, 2018, Defendant amended its Comprehensive Plan's Conservation and Coastal Management Element to prevent Plaintiffs from developing their property despite having found the application sufficient seven months before. (See, [Dkt. 1], Complaint, at paras. 36-37, and exhibits thereto).

8.      Then Plaintiffs' application went to an Hearing Examiner ("HEX") who conducted four hearings, over about three-year period; October 23, 2019 to July 12, 2022.

9.      After the third hearing, on January 7, 2020, the HEX remanded the case to County staff for an administrative interpretation pursuant to Chapter XII of the Comprehensive Plan. (See, [Dkt. 1], Complaint, at paras. 39-42).

3

#24979736_v1 150748.0003

10.     On June 29, 2022, based on the interpretive findings that certain uplands had been wrongfully classified as wetlands on the Lee Plan Future User Map, Lee County staff determined that Plaintiffs proposal to develop 55 dwelling units was consistent with Lee County's Comprehensive Policies as they pertain to area density. (Id., at paras. 43-44).

11.     Despite the staff's findings and conclusions, the HEX held a fourth hearing on July 12, 2022. Thereafter the HEX issued a Formal Recommendation that Plaintiffs' application and proposal be denied as being inconsistent with the amended Coastal High Hazard Area policy.

12.     On April 5, 2023, The Lee County Board of County Commissioner held a hearing to review the HEX's recommendations. At the hearing, staff argued, despite their previous interpretive findings, that the property should not be rezoned for environmental preservation reasons. The staff analysis was flawed and Plaintiffs requested legal and factual review as well as a discussion of their estoppel claim against the County, which claim was ignored. (See, [Dkt. 1], Complaint, at paras. 40-53).

13.     Mindful of environmental issues, Plaintiffs proposed to place 259 of the 306 acres of property into a preserve and restore the areas hydrology for many of its indigenous species including mangroves.

4

#24979736_v1 150748.0003

14.    Plaintiffs thus proposed to develop approximately only 47 acres of their property to try to work with the County and accommodate the environmental issues being raised. Nevertheless, the Commissioners turned their back again on Plaintiffs' proposals and vested property rights and voted, in a quasi-judicial proceeding, to deny their application once and for all.

15.    Plaintiffs have suffered a property value loss of more than $28 million, approximately its total value; notwithstanding Eden Oak's $11 million in investment for development. Such a loss warrants an undertaking of a full evidentiary review and discovery based on the facts and events noted above.

## III. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, a Complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v Iqbal,* 556 U.S. 662, 678(2009); see too, *Bell Atlantic Corp. v Twombly,* 550 U.S. 544, 557 (2007). Under *Ashcroft v. Iqbal, supra.,* at 678, to meet the standard of plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." While Rule 8, Federal Rules of Civil Procedure, provides for a liberal pleading standard, "a complaint must contain either direct or inferential allegations respecting all material elements of a cause of action." *Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1320 (11th Cir. 2006).

#24979736_v1 150748.0003

On a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept the allegations as true and will dismiss it only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. See, *Glover v. Liggett Group, Inc.,* 459 F.3d 1304, 1308(11th Cir 2006).

### IV. <u>Law and Argument</u>

#### A. <u>The Statute of Limitations</u>

Defendant argues that all three Counts are time-barred based upon the four-year statute of limitations takings challenges brought under 42 U.S.C. section 1983. Defendant says that "the limitations period accrues when the challenged regulation is enacted. ([Dkt. 12], Motion to Dismiss, hereinafter "MTD", at p. 6). In support of its argument, Defendant has relied upon *Hillcrest Prop., LLC v. Pasco County,* 764 F.3d 1279, 1281-83(11th Cir. 2014), and *Suitum v. Tahoe Reg'l Plan Agency,* 520 U.S. 725, 736 n.10 (1997). In Defendant's view, the statute of limitations began to run on December 5, 2018, when the County adopted policy amendments to the Comprehensive Plan's Conservation and Coastal Management Element which restricted development in the Coastal High Hazards Area. Defendant thus has arbitrarily set forth a commencement date to fit its narrative and has refused any reliance upon the Commission's final decision, undertaken within a quasi-judicial proceeding, in April 2023. (See, [Dkt. 12], MTD, at pp. 6-7, and the

6

Complaint, at paras. 35-37). In advancing its argument, Defendant avoided the key issues and events related to Plaintiffs' application and has read the law in a selective manner to arrive at the outcome it wants.

The amendments to the Comprehensive Plan were not an ordinance that put an end to Plaintiffs' application to rezone their property that had been pending since December 16, 2016, and that the County had found sufficient on May 16, 2018. Both events were prior to the amendments that the Defendant claims should be the point of accrual. Quite significantly, the County did not dismiss or deny the application for rezoning on December 5, 2018. Rather, it was obviously important enough to send to a HEX for review. The HEX held four hearings on the matter over a several-year period.

After the third hearing, the HEX stayed the proceedings and requested an Administrative Interpretation Report from staff. Staff reported that Plaintiffs were entitled to develop property and build fifty-five (55) dwelling units pursuant to and consistent with Plan policies. Despite this, the HEX issued recommendations in which he disagreed with staff and recommended that the application should be denied.

On April 5, 2023, the Lee County Board of County Commissioners, sitting as a quasi-judicial body to review and discuss the HEX's recommendations, voted to approve them and deny Plaintiffs application. The Board's decision is the legal

#24979736_v1 150748.0003

event that would start the four-year statute of limitations clock running. After waiting over six years, Plaintiffs' application was jettisoned Lee County thereby ending Plaintiffs' ability to develop their property. Defendant's decision, as will be more fully discussed later, was either a categorical or a partial regulatory taking of property without compensation in violation of the Fifth and Fourteen Amendments, but also a violation of its property rights under the Equal Protection Clause of the Fourteenth Amendment. With this in mind, if one starts the clock running from April 5, 2023, Plaintiffs filed their Complaint on March 19, 2026, well within the four-year limitations period thereby ending Defendant's jurisdictional issue.

Moreover, Defendant has tried to vigorously argue that the Comprehensive Plan policy changes on December 5, 2018, became the decisional event for the triggering of the four-year statute of limitations period. The only problem is that a "comprehensive plan is not a final decision to satisfy the ripeness requirement" under law. See, *Lozman v. City of Riviera Beach,* 119 F.4th 913 Plaintiffs 917 (11th Cir 2024). In *Lozman,* the 11th Circuit added, significant to the case at bar, that it had reached a similar result in *Reahard v. Lee County,* 30 F. 3d 1412, 1415-1416 (11th Cir. 1994) when it held that the landowner's takings claim could not have ripened until the landowner had received a final decision from the Lee County Board of County Commissioners on their variance application.

8

In this case, Commissioners, as a Board, issued a final decision on April 5, 2023. To reach the result it wants, Defendant has unfortunately ignored the *Lozman* and *Reahard* cases. In *Suitum v. Regional Planning Agency,* 520 U.S. at 734, the Supreme Court was quite clear that a final decision regarding an application must be received before a Plaintiff can file a takings claim against a government entity. The same legal principle is operative in *Williamson County Planning Hamilton Bank,* 473 U.S. 172, 191 (1985) in which the Supreme Court noted that the respondent in that case had to obtain "a final decision how it will be allowed to develop its property" before a Fifth Amendment takings claim could proceed forward. Accordingly, Defendant's claim that all three Counts are time-barred is without foundation and its Motion to Dismiss on the statute of limitations issue must be denied as a matter of law.

B.  The Regulatory Framework and the Wrongful Taking of Plaintiffs' Property

1. Count I.

In addition to the extensive factual background provided, in Count I, Plaintiffs have alleged that "Eden had reasonable investment backed expectations for its use of the property having invested over $11 million in property acquisition, engineering, land use consultants and other costs to develop the property." (*See,* [Dkt. 1], Complaint, at para. 71). As a consequence of Lee County's actions and

9

decisions, the property has been rendered "undevelopable and economically unviable with little to no fair market value remaining." (Id., at para. 72).

The County's regulatory taking constituted a categorical taking under Federal constitutional law without just compensation by the Defendant. Defendant has sought to counter Plaintiffs' factual and legal allegations by claiming that under *Lucas v. South Carolina Council,* 505 U.S. 1003 (1992) the deprivation of use of the property must be a deprivation of all beneficial use, and that even a 95% diminution does not satisfy the requirements of the case. Rather, Defendant shifts the focus and contends that Plaintiffs' claim is really "a *Penn Central* diminution-in-value claim not a *Lucas* categorical taking." (See, [Dkt. 12], MTD, at pp.7-8).

Defendant has misread the categorical takings analysis set forth in *Lucas* and later cases. In *Lucas,* the Court noted that "total beneficial use is, from the landowner's point of view, the equivalent of a physical appropriation." *Lucas v. South Carolina Council,* 505 U.S. 1003, 1017 (1992). In fact, on point for this case, where Plaintiffs have been deprived of all productive and beneficial use of their property to build housing units, the Court added: "Surely, at least, in the extraordinary circumstance when no productive or economically beneficial use of a kind is permitted, it is less realistic to indulge in our usual assumption that the legislature is simply adjusting the benefits and burdens of economic life." (Id., at 1017-1018). Rather, "regulations that leave the owner of land without economically

#24979736_v1 150748.0003

beneficial or economic options for its use carry with them the heighten risk that private property being pressed into some form of public service under the guise of mitigating serious public harm." *Lucas*, 505 U.S. at 1018. This is precisely what Plaintiffs have alleged in their Complaint and which Defendant has chosen to ignore in its Motion to Dismiss.

Further, Defendant has by-passed the language in the Court's "total taking" inquiry which states quite clearly the following: "When, however, a regulation that declares 'off limits,' all economically Productive or beneficial uses of land beyond what the relevant background principles would dictate, compensation must be paid to sustain it." *Lucas,* 505 U.S. at 1030. And for the purposes of the Motion to Dismiss in this case, the Court noted that "a total taking inquiry" is a factual one warranting the case to proceed forward. Defendant's Motion to Dismiss Count I, therefore, should be denied.

Federal cases have applied the *Lucas* analysis in the manner that Plaintiffs have advanced. In *Loveladies Harbor Inc, v. United States,* 28 F.3d 1171 (Fed Cir. 1994) *abrogated on other grounds* by *Bass Enterprises Prod. Co. v. United States*, 381 F.3d 1360, 1369–70 (Fed. Cir. 2004), for example, Plaintiff had 38.5 acres of land and agreed to develop 12.5 acres. The Federal Circuit determined that the 12.5 acres was the relevant property for analysis. The Court held that "this is a case in which the owner of the relevant parcel was deprived of all economic feasible use," and

11

affirmed the trial court's finding for the Plaintiff. Appropriate for this case, the Federal Circuit added that it was important to note that the Plaintiff had purchased the property with the intent to develop it long before the regulatory programs had gone into effect. Similarly, in *Yancy v. United States*, 915 F.2d 1534 (Fed Cir. 1990), held with respect to Fifth Amendment takings analysis that "the application of a regulation to a particular property effects a taking if the regulation…denies the owner an economically viable use of his land."

While Defendant has tried to shift the inquiry to a causation analysis, which is not appropriate at this stage of the proceeding since it would necessitate intensive factual inquiry, the misreading of *Lucas* remains. In *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 526, 538 (2005), the Supreme Court recognized that the categorical rule in *Lucas* was one in which the regulation deprived the property owner of all economically beneficial use of the property. That has happened in this case. The County made it clear on April 5, 2023, in denying Plaintiffs' application, that the acres under review were henceforth forbidden from being developed.

In this regard, in *Lingle*, the Court recognized the often-contextual nature of property takings deprivation analysis. After discussing the regulatory action set forth in *Lucas*, the Court noted that outside of the "two relatively narrow categories" discussed therein, one needs to consider the factors as well set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104. Primary among these

12

factors is "the economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations." *Lingle v. Chevron U.S.A., Inc.,* 544 U.S. at 539, and *Penn Central,* 438 U.S. at 124. Defendant has left out of its Motion this analytical bridge between *Lucas,* and *Penn Central,* recognized by the Court in *Lingle.*

Plaintiffs have articulated, in the factual background to Count I, that the County's decision to deny their application deprived them not only of the productive and beneficial use of their property, but also with their investment-backed expectations which were shattered by the County's actions and decisions. In sum, Defendant's Motion to Dismiss Count I should be denied as a matter of law.

2. Count II

In its Motion to Dismiss, Defendant has argued that the Complaint contains no factual allegations of economic impact. Defendant's argument is simply wrong. After having waited almost seven years on its application, the County denied it and shut the door on Plaintiffs' ability to develop its property. The loss of an $11 million investment, and $28 million in property value, certainly bespeaks of a serious economic investment and the loss of value occasioned by the County's actions. These are not conclusory allegations devoid of factual content. They are matters clearly presented in the Complaint which undermine Defendant rather hyperbolic

13

#24979736_v1 150748.0003

assertions. (See, [Dkt. 1], Complaint, at paras. 27-28, 33-38, 42-44, 47-51, 56-65, 71-72, and 79-82). Plaintiffs have quite clearly alleged in Count II that not only did the Defendant's denial of the application constitute a regulatory appropriation of their wetlands private property, but also that its impact has been "a permanent and total deprivation of all use and enjoyment" of it. (Id., at para. 82).

In *Penn Central Transportation Co v. New York City,* 438 U.S. 104, 124-125 (1978), the Supreme determine that in addition to the importance of undertaking *ad hoc* factual inquiries, three broad factors should also be considered: 1) the regulation's economic impact on the claimant; 2)the extent to which the regulation has interfered with the claimant's distinct investment-backed expectations; and 3) the character of the government's action. The *Penn Central* factors are on point for this case and especially Count II. Plaintiffs have alleged that a) effect of the County's regulatory actions have had a destructive economic impact on them; b) interfered with their distinct investment-backed expectations and opportunities; and 3) the character of the County's actions after almost 7 years of waiting, deprived it of all economically viable and beneficial use of their property with the concomitant effect of taking their property without just compensation.

In addition, important to this case is "whether a given regulation goes too far for the purposes of the Fifth Amendment is determined by an ad hoc factual inquiry." See, *Cienega Gardens v. United States*, 331 F.3d 1319, 1337(2003). This would

14

once again take us beyond the motion to dismiss stage of the proceedings. Factual inquiry through discovery thus must be undertaken to meaningfully assess and prove the facts and issues alleged.

In *Cienega Gardens,* the Court also noted that "what has evolved in the case law is a threshold requirement that the Plaintiffs show serious financial loss from the regulatory imposition to merit compensation. (*Id.,* at 1340). In this case, the Plaintiffs have indeed alleged serious financial loss to eviscerate Defendant's claim the Complaint should be dismissed. The purpose of discovery is to gather and present evidence of serious financial loss sufficient to establish the economic impact of the regulation. (*Id.,* at 1341). The Court also held, significantly for both Counts I and I that "it is clearly not the law that only such 100% value regulatory takings are compensable… Nothing in the Fifth Amendment limits its protection to only categorical regulatory takings nor has the Supreme Court or this court so held." (*Id.,* at 1343).

Despite its best efforts, Defendant has overlooked the core issue that the County's regulatory decisions went too far. By denying the application for rezoning in its totality, without working out areas where Plaintiffs could have proceed with developing the property, the property was deprived of its full value as well as its full beneficial and productive use. This was made eminently clear when Commissioner Ruane stated at the April 5, 2023, meeting "my motion is for

15

complete denial." (See, [Dkt. 1], Complaint, at para. 61). Accordingly, it is submitted that there is no basis for Defendant's Motion to Dismiss Count II and it should be denied as a matter of law. Plaintiffs have adequately pled Count II, as they did Count I, under the standard of review.

3. Count III.

Count III is an Equal Protection claim brought pursuant to 42 U.S.C. section 1983, the Fourteenth Amendment of the U.S. Constitution, and *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). In *Olech,* the Supreme Court recognized claims brought by a class of one "where plaintiff alleges that she has been intentionally treated differently from other similarly situated and that there is no rational basis for the difference in treatment." (Id., at 564).

In *Olech,* Ms. Olech's Complaint alleged that the village intentionally, arbitrarily, and irrationally demanded a 33-foot easement from her for the purposes of water hook-up while requiring only a 15-foot easement from similarly situated property owners. The Court held that her allegations were "sufficient to state a claim for relief under traditional equal protection analysis. In the Complaint at issue, Plaintiffs have alleged that multiple other similarly situated properties were permitted to undertake development in the Coastal High Hazard Zone while not allowing Eden Oak to do so. (See, [Dkt. 1], Complaint, at paras. 92-93). Moreover, multiple other similarly situated properties were approved for redevelopment that

16

#24979736_v1 150748.0003

impact wetlands and the Coastal Hazard Zone. These are identified in the Complaint to factually address the similarly situated criterion under Equal Protection analysis. (Id., at paras. 94-95); and b) the intentional ignoring of the requests to address Plaintiffs' estoppel claims. The arbitrary nature of Defendant's actions are alleged as well. (See, [Dkt. 1], Complaint, at paras .96-100).

In its Motion to Dismiss, Defendant disagrees with the properties Plaintiffs have alleged to be similarly situated but were permitted to develop or redevelop, and the projects involved, including project proposals of Eden Oak that the County denied. ([Dkt. 12], MTD, at paras. 18-20). Defendant's claim that the properties, projects and so on were not similarly situated to that of Plaintiffs involve factual and evidentiary issues warranting discovery not dismissal. Defendants conflate the standards applicable to a motion to dismiss with that for summary judgment.

Plaintiffs have certainly alleged with multiple factual examples that the County subjected them to intentionally and arbitrarily different treatment that it did others without a rational basis or explanation for it, especially given 1) almost seven years of waiting for a final decision on its application; 2) having been led to belief it was sufficient and approved; 3) multiple hearings over multiple year without resolution; 4) and approving every other known similar application, and so on. Accordingly, it is submitted that Defendant's Motion to Dismiss Count III is

#24979736_v1 150748.0003

analytically, factually, and legally confusing and should be dismissed as a matter of law.

### C. Defendant's Request to Stay

Defendant's request for stay is also due to be denied. Key is that the Supreme Court says federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). "Abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Allstate Ins. Co. v. Auto Glass Am.*, *LLC*, 418 F. Supp. 3d 1009, 1027 (M.D. Fla. 2019) (citing *Colorado River*, 424 US 800.).

No state or federal entity has assumed jurisdiction over the property. The asserted inconvenience of the federal forum, Plaintiffs would suggest, is not well taken since the Lee County Court house and the federal courthouse are next to each other. Further, completely different laws (federal v. state) apply in the two cases. Defendant has even represented to the state court that for technical reasons have to do with intricacies of the Bert J. Harris Act that do not apply to a takings claim, that Plaintiffs "may have" a takings claim but have no cause of action under Bert Harris. Importantly, the *Olech* claims are distinct, have different factual elements, and different damages than the Bert Harris claim in state court. Whether Defendants prevail or fail on the Bert Harris claim has no effect whatsoever on

#24979736_v1 150748.0003

whether Eden Oaks' equal protection rights were violated. And, Defendant has nor provided a sound basis for a stay for this claim. And, staying the takings claims while proceeding with the *Olech* claim would result in piecemeal litigation. And, to the extent Defendants are arguing for an exhausting their state law remedies before seeking the jurisdiction of this Court, Defendant's request is without legal merit. In <u>Knick v. Township of Scott</u>, 588 U.S. 180 (2019), The Supreme Court stated that "the exhaustion of state remedies is not a prerequisite to an action under 42 U.S.C. Section 1983." *Id.* at 185. Finally, Defendant failed to follow Local Rule 3.01(g) regarding conferral on the stay portion of its motion.

<u>CONCLUSION</u>

Under any meaningful review, Plaintiffs' Complaint has satisfied the standard of plausibility. Plaintiffs have pleaded extensive facts whose content shows that Defendant is liable for the misconduct alleged pursuant to the takings and equal protection criteria set forth Fifth and Fourteenth Amendments of the U.S. Constitution and related case law.

In this context, the claim that all three Counts are time-barred is simply wrong. The triggering event to set the clock running for the four-year statute of limitations occurred on April 5, 2023, when the Lee County Board of County Commissioners met in a quasi-judicial capacity to review the HEX's recommendations and voted to deny Plaintiffs' application for rezoning.

19

Plaintiffs waited almost seven years. They were told the application was sufficient and that the project to build dwelling units could proceed only to have the carpet arbitrarily pulled out from under them. The County's actions and decisions meant the deprivation of the full beneficial and economic use of their property. They have lost some $28 million in property value, certainly a taking without just compensation. Plaintiffs accordingly request this Court to deny Defendant's Motion to Dismiss and have this case proceed forward, or in the alternative grant Plaintiffs leave to amend the complaint.

Respectfully submitted,

/s/ James Fox
JAMES D. FOX
Florida Bar No. (689289)
jfox@ralaw.com
Roetzel & Andress, LPA
999 Vanderbilt Beach Rd
Suite 401
Naples, FL  34108
239.649.6200
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2026, I electronically filed the foregoing Brief in Opposition to Defendant's Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ James D. Fox

20

#24979736_v1 150748.0003

James D. Fox
Florida Bar No. 689289

#24979736_v1 150748.0003